UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNNE LAPENSEE AND ROLAND LAPENSEE | ) | |
| | ) | |
| **Plaintiffs** | ) | CIVIL NO. 3:03CV1739 (CFD) |
| V. | ) | |
| | ) | |
| WHITEHALL-ROBINS, a Division of WYETH f/k/a AMERICAN HOME PRODUCTS CORPORATION; and WAL-MART STORES, INC. | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' LIMITED OPPOSITION TO WYETH'S MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF OTHER CLAIMS, LAWSUITS AND PROCEEDINGS**

**I.      INTRODUCTION**

Wyeth seeks to exclude reference to and evidence of (1) other lawsuits, claims, proceedings, judgments, verdicts, settlements or settlement discussions <u>involving a Wyeth product or any other manufacturer's product containing PPA</u> ("other PPA litigation") and (2) other lawsuits, claims, proceedings, judgments, verdicts, settlements or settlement discussions, hearings, government investigations, regulatory action and proceedings, <u>involving other products of Wyeth or its predecessors</u> ("other product proceedings").  Plaintiffs hereby submit their limited opposition to this Wyeth *in limine* motion.

**II.      ARGUMENT**

**A.      <u>As To Certain Aspects Common To Both "Other PPA Litigation" And "Other Product Proceedings".</u>**

Plaintiffs will not reference or offer evidence of judgment, verdicts, settlements or settlement discussions involving <u>any</u> Wyeth product or any other manufacturer's PPA product <u>unless and until</u> Wyeth, its counsel, or a Wyeth witness does so.

If Wyeth, during the course of the trial of this case, makes reference to or offers evidence of the results of any PPA litigation, then the subject of the relative success or failure of PPA claims becomes both relevant and subject to rebuttal evidence and argument.

**B.      As To The Remaining Aspects Of "Other Product Proceedings".**

Plaintiffs oppose Wyeth's effort to exclude any reference or offer of evidence regarding lawsuits, claims, proceedings, hearings, government investigations, regulatory actions and proceedings involving other products of Wyeth or its predecessors.

Wyeth seeks to exclude reference to or evidence regarding its other products. In the context of the claims and defenses of this case, the evidence that Wyeth seeks to exclude is clearly relevant and is not excludable under Rule 403.

Obviously, if Wyeth references or offers evidence of its other products, the assertions or evidence becomes subject to rebuttal. Hence, reference or evidence of safe and efficacious Wyeth products that reflect well on Wyeth would open the door to reference or evidence of its drug products that have been decidedly unsafe and ineffective. Similarly, if Wyeth makes reference to or offers evidence of its reputation or character as a company that serves the public good by marketing and selling medicines and drugs that improves people's lives, evidence of Wyeth's products that did not or do not support that contention becomes both relevant and necessary.

Moreover, plaintiffs anticipate that Wyeth will attempt to introduce evidence or argue that its PPA products were safe and their labeling fully and properly warned of the risks associated with its use because the FDA approved or otherwise permitted the marketing of those drugs. In doing so, Wyeth hopes to play on a public perception, or prove, that the FDA is the

"gold standard" determinant of drug product safety,[1] and its continuing failure to recall or to

adequately warn of the risks of PPA were justified by the FDA's failure to force Wyeth to do so.[2]

If that argument, implicit or explicit, is made or evidence to support such an argument is offered

or sought,[3] evidence and argument pertaining to other drugs that gained FDA approval as safe, or

otherwise were permitted to be marketed, and were later determined to have been unsafe and

forced from the market, becomes both relevant and appropriate.  Some of the most notable of the

recent examples of such drugs were manufactured and marketed by Wyeth.

Lastly, it is indisputable that Wyeth manufactured and sold a number of other over-the-

counter ("OTC") cough and cold products containing the decongestant pseudoephedrine ("PSE")

instead of PPA, also a decongestant.  Like PPA, PSE was subject to FDA approval procedures

intended to determine, among other things, whether drugs contained in OTC products were safe

and effective.  Unlike PPA, which was never determined to be safe and effective by the FDA[4],

PSE was found to be safe and effective by the FDA.  Because PSE was clearly a safer alternative

to PPA, FDA proceedings and findings regarding the determination that PSE was safe, when that

determination was made, and the fact that Wyeth manufactured and sold cough and cold

products containing PSE are relevant.  In fact, following withdrawal of its PPA products from

the market in November, 2000, Wyeth almost immediately began marketing products bearing the

---

[1] Wyeth, it turns out, does so only when it serves its purposes. As demonstrated in its *Motion In Limine To Exclude Evidence Related To FDA's Notices Of Proposed Rulemaking*, Wyeth bitterly contests the FDA's finding that PPA is not safe and should not be marketed.
[2] This anticipated argument and evidence is commonly referred to as the "FDA defense." The defense is a preemption argument in disguise, necessary because there is no judicially recognized preemption as a matter of law with regard to pharmaceutical (as opposed to medical devices) products. Notably, defendant has affirmatively pleaded federal preemption as an affirmative defense in its answer to plaintiffs' complaint.
[3] Defendant's trial exhibit list is replete with documents it presumably will seek to introduce to support that argument.
[4] Wyeth will and has contended that FDA's failure to find that PPA was unsafe, and the Agency's failure to take steps to take it off the market, amounted to tacit approval of the safety of PPA.

same brand name, the only difference between the two being that the new products had been reformulated by replacing PPA with PSE.

Any assertion that admission of this evidence should be precluded pursuant to Fed. R. Evid. 403 is untenable. As more fully set forth in its opposition to *Wyeth's Motion in Limine to Exclude Post-Distribution Evidence,* evidence that is unfavorable to a party is not precluded by application of Rule 403; it is only evidence whose probative value is outweighed by the prejudice of admission of the evidence. Here, that question is easily answered by consideration of the effect of its exclusion: without the evidence sought to be excluded, the jury could and would be deceived into concluding that FDA approval of a drug or failure to remove it from the market is determinative of the drugs safety. Similarly, without the evidence relating to PSE and Wyeth's PSE products, the jury would not be informed that Wyeth, knowing of the relative risks of PPA and PSE, had chosen not to replace the PPA in Dimetapp with the safer, and approved, alternative to PPA prior to Ms. Lapensee's ingestion of PPA and consequent stroke. Preclusion of the evidence Wyeth seeks to hide from the jury would unduly prejudice plaintiffs alone, while its admission would permit evidence whose probative value greatly exceeds any prejudice from its admission.

In conclusion, because Wyeth and its fellow PPA marketing drug companies have consistently asserted the "FDA defense," reference to and evidence relating to the regulatory history of other products, including a number of Wyeth's other products, are relevant to the issue of whether FDA approval of a product is a reasonable or reliable indicator of that product's safety or the adequacy of its labeling. To the extent that Wyeth seeks to justify its own conduct by the failure of the FDA to act on PPA, something it clearly seeks to do, its firsthand knowledge of FDA approvals of drugs subsequently determined to be unsafe or improperly labeled or both

4

is clearly relevant.  Similarly, evidence of the regulatory history of PSE, another decongestant contained within other Wyeth products, is relevant to establish the availability of a safer alternative to PPA.

**C.      As To The Remaining Aspects Of "Other PPA Litigation".**

Plaintiffs oppose Wyeth's attempt to preclude <u>any</u> reference or evidence of other lawsuits, claims, and proceedings[5] involving PPA products of Wyeth or any other manufacturer. While Wyeth cites to law which might support the exclusion of such evidence as it relates to some issues in this case, the evidence it seeks to exclude is relevant to other issues not addressed or recognized by Wyeth in its moving papers.

For instance, the nature and extent of other PPA cases in which Wyeth's experts are involved as either a disclosed expert or expert consultant are relevant, proper and appropriate subjects of cross-examination of defendant's experts.  That information is probative of the objectivity and credibility of Wyeth's experts, yet Wyeth seeks to exclude it.

Similarly, reported decisions of federal or state courts prior to October, 2000 involving a PPA product would be admissible as evidence that Wyeth had notice that courts of law were finding that expert evidence that PPA presented a risk of hemorrhagic stroke was based on reliable scientific evidence.  Wyeth has consistently denied that there exists reliable evidence from which a jury or an expert could reach such a conclusion.  In rebuttal, plaintiffs' may offer the Sixth Circuit legal opinion of *Glaser v. Thompson Medical Co., Inc.,* 32 F.3d 969 (6th Cir.) *rehearing en banc denied*, 1994 U.S. App. LEXIS 31316 (6th Cir. Nov. 9, 1994) into evidence or reference it during cross-examination of defense corporate witnesses for its value as "notice" that courts of law had found to the contrary.

---

[5] As used in connection with this category of evidence it seeks to exclude, plaintiffs assume that the term "proceedings" does not include FDA regulatory proceedings involving PPA, and is responding to this motion *in limine* accordingly.

Finally, Conn. Gen. Stats. §52-240b specifically provides that "(p)unitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." Hence, a claimant must provide evidence of a "reckless disregard for the safety of users, consumers, or others who were injured by the product", not just a reckless disregard for the claimant. As held by the Connecticut Supreme Court in *Potter v. Chicago Pneumatic Tool Company,* 241 Conn. 199, 261 (1997) in reversing a trial court ruling prohibiting a physician from testifying about the number of people who suffered injuries from defendant's product:

> (a)s part of the punitive damages claim, the plaintiffs raised the issue of the defendants' reckless disregard for the safety of the plaintiffs and others. See *General Statutes § 52-240b* ("punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product"). In our view, evidence of the number of persons injured by the defendants' tools was relevant to the plaintiffs' punitive damage claim.

As indicated in the *Potter* decision, the next question to be asked is whether the probative value of evidence of the number of persons injured by defendant's product outweighs its prejudice. *Id.,* 241 Conn. at 261-2. Clearly, if an element of proof in a claim for punitive damages is evidence that the harm suffered was a result of a reckless disregard for the safety of others, then the preclusion of all such evidence would necessarily preclude a successful punitive damage claim, despite the availability of such evidence. That result would essentially emasculate the legislative decision to permit punitive damages under the conditions specified. Therefore, preclusion pursuant to Rule 403 will turn on the extent of the evidence of harm from the product to others, not whether some evidence will be offered. That being the case, defendant's motion, which seeks preclusion of all such evidence, must be denied.

6

## III.   CONCLUSION

For all the reasons set forth herein, plaintiffs respectfully urge the court to deny those aspects of Wyeth's motion to which plaintiffs are opposed.  As to the remaining aspects of Wyeth's motion, plaintiffs will stipulate that they will not reference or offer evidence of judgment, verdicts, settlements or settlement discussions involving any Wyeth product or any other manufacturer's PPA product unless and until Wyeth, its counsel, or a Wyeth witness does so.

**Respectfully submitted,**

**LYNNE & ROLAND LAPENSEE**
By their attorneys


   /s/ H. Bissell Carey, III
H. Bissell Carey, III (CT-09241)
James D. Gotz (phv0701)
Steven B. Rotman (phv0988)
**ROBINSON & COLE** LLP
One Boston Place
Boston, Massachusetts 02108-4404
(617) 557-5900

David Thomas Ryan (CT-05713)
**ROBINSON & COLE** LLP
280 Trumbull Street
Hartford, CT 06103-3597


Dated:  April 11, 2006